**In re SMITH ROAD FURNITURE, INC. F/K/A Bell Furniture Industries, Inc., Debtor–in–Possession.**

**Smith Road Furniture, Inc. F/K/A Bell Furniture Industries, Inc., Plaintiff,**

v.

**IBC Group, Inc., Defendant.**

**Bankruptcy No. 00–14507. Adversary No. 02–1311.**

United States Bankruptcy Court, S.D. Ohio, Western Division.

Sept. 19, 2003.

Ronald E. Gold, Michael J. O'Grady, Jeffrey L. Zackerman, Jennifer Stefanski, Cincinnati, OH, for Debtor.

Jeffrey M. Hendricks, Cincinnati, OH, for Defendant.

## MEMORANDUM ON ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JEFFERY P. HOPKINS, Bankruptcy Judge.

This is a preference action pursuant to 11 U.S.C. § 547(b). Presently before the Court is a summary judgment motion ("Motion") (Doc. 15) filed by Smith Road Furniture, Inc. ("Smith Road"). The Motion will be granted as to the Smith Road's case in chief under § 547(b). The Motion

will be denied as to the ordinary course of business defense asserted by IBC Group, Inc. ("IBC"), pursuant to 11 U.S.C. § 547(c)(2), because there exists a genuine issue of material fact.

Section 547(b) provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

By its response to the Motion, IBC "admitted that the elements at Sections 547(b)(1), (2) and (4) have been satisfied." (Doc. 19 at 2.) As to § 547(b)(3), 11 U.S.C. § 547(f) creates a presumption of insolvency that IBC has failed to rebut.[1] As to § 547(b)(5), the affidavit of Peter M. Lah-

ni, Jr., provides that Smith Road "will not be able to pay a 100% dividend to unsecured creditors such as IBC Group, Inc., in this chapter 11 case." (Doc. 23 at ¶ 5.) Accordingly, Smith Road has satisfied its burden of proof under § 547(b) and is entitled to summary judgment on its case in chief.

 This leaves IBC's ordinary course of business defense pursuant to § 547(c)(2), which provides:

The trustee may not avoid under this section a transfer—

. . . .

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms[.]

IBC bears the burden of proving each of the three elements of the § 547(c)(2) defense by a preponderance of the evidence. *Luper v. Columbia Gas of Ohio (In re Carled, Inc.)*, 91 F.3d 811, 813 (6th Cir. 1996); *Logan v. Basic Distribution Corp. (In re Fred Hawes Organization, Inc.)*, 957 F.2d 239, 241 (6th Cir.1992).

By its Motion, Smith Road moves for summary judgment on the ordinary course defense pursuant to *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

---

**1.** Section 547(f) provides:

For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Smith Road contends that IBC cannot sustain its burden of proof as to § 547(c)(2)(C).[2]

■ Subsection C requires proof that the transfers at issue were objectively ordinary in relation to industry standards. *Carled*, 91 F.3d at 813. "An examination of these industry standards requires: (1) an identification of the relevant industry; and (2) an objective examination of its standards and practices to determine if this transfer within the outer boundaries of the industry." *Grigsby v. Purolator Prods. Air Filtration Co., Inc. (In re Apex Automotive Warehouse, L.P.),* 245 B.R. 543, 550 (Bankr.N.D.Ill.2000). Although case law is divided, the Sixth Circuit has looked to the creditor's industry as the controlling industry under § 547(c)(2)(C). *See Carled,* 91 F.3d at 814–18. The record in this proceeding establishes that IBC is in the industry of bedding manufacturing. (Doc. 23 at ¶ 4; Doc. 15 at Ex. B ¶ 4.) Consequently, the issue is whether the transfers to IBC were within the outer boundaries of the bedding manufacturing industry.

Smith Road contends that the report of IBC's expert, Gerald J. Brady, establishes that the transfers could not possibly fall within the outer boundaries of the industry. Mr. Brady's report provides that the industry norm on accounts with payment terms of net 30 days is payment within 45–50 days from the invoice date. (Doc. 15 at Ex. B ¶ 4.) Although IBC's standard terms are net 30 days (Doc. 15 at Ex. B ¶ 3), IBC put Smith Road on terms of net 10 days starting in 1997. (Doc. 20 at ¶ 4; Doc. 15

at Ex. B ¶ 3.) Because Smith Road's terms of net 10 differ from the industry norm of net 30 Smith Road argues that it is entitled to summary judgment.

■ Many courts have adopted a "sliding scale" standard under § 547(c)(2)(C) that has been articulated as follows:

the more cemented (as measured by its duration) the pre-insolvency relationship between the debtor and the creditor, the more the creditor will be allowed to vary its credit terms from the industry norm yet remain within the safe harbor of § 547(c)(2). The likelihood of unfair overreaching by a creditor (to the disadvantage of other creditors) is reduced if the parties sustained the same relationship for a substantial time frame prior to the debtor's insolvency. After all, if at the starting point of the relationship insolvency was a distant prospect, a trade creditor does not unfairly overreach, impel insolvency, or inequitably advantage itself at other creditors' expense by tolerating more generous or commanding more stringent repayment schedules than its competitors.

*See Fiber Lite Corp. v. Molded Acoustical Prods., Inc. (In re Molded Acoustical Prods., Inc.),* 18 F.3d 217, 225 (3rd Cir. 1994). The Sixth Circuit appears to have approved of this approach. *See Carled,* 91 F.3d at 816.

■ Applying the foregoing principle to this proceeding yields a factual dispute. On the one hand, normal industry payment terms are net 30 days while Smith Road was on terms of net 10 days. On the other hand, IBC instituted these terms in 1997– three years prior to the bankruptcy filing. Applying the *Fiber Lite* sliding scale, there exists a genuine issue of material fact as to

---

**2.** The Motion challenges IBC's ability to satisfy § 547(c)(2)(C) only. It does not address § 547(c)(2)(A) or (B).

whether the subjective relationship between the parties is strong enough to overcome the parties' deviation from industry norms.

For the foregoing reasons, the Motion will be **GRANTED.** as to 11 U.S.C. § 547(b) and **DENIED** as to 11 U.S.C. § 547(c)(2)(C). An order to this effect will be entered.